# Simpson *v.* Lauderdale County.

### *Action against County, on Promissory Note for Borrowed Money.*

1. *Loan of Confederate treasury-notes, as consideration of note.*—A loan of Confederate States treasury-notes in 1862, when they were the principal circulating medium here, is a sufficient consideration to support a promissory note.

2. *Error without injury, in charge to jury.*—When the record shows that the plaintiff was not entitled to recover in any event, the appellate court will not, at his instance, reverse the judgment on account of any erroneous instructions to the jury, since error without injury is no ground for a reversal.

3. *County; power to borrow money.*—A county, though made a corporation by statute (Rev. Code, § 897), and clothed with certain governmental powers, has no power to borrow money for the purpose of erecting necessary bridges, unless that power is conferred by special legislation.

APPEAL from the Circuit Court of Lauderdale.

Tried before the Hon. JAMES S. CLARK.

This action was brought by William Simpson, as the surviving partner of the late firm of Tate, Simpson & Co., against Lauderdale county as a corporation; was commenced on the 7th August, 1869, and was founded on two promissory notes, or instruments in writing, in the following words: "$500. Florence, Ala., May 12, 1862. By authority of the Commissioners' Court of Lauderdale county, Alabama, I have this day borrowed of Tate, Simpson & Co. five hundred dollars, which amount is to bear interest, at the rate of eight per cent. *per annum*, until paid by said county;" signed, "W. J. HAWKINS, J. Probate." The other note was in the same words, except that it was for $300, and was dated May 26, 1862. The complaint averred, that these instruments were executed by authority of the Commissioners' Court of said county, for money loaned to the county to pay for building a bridge across a stream within the county; that they had been duly presented to the Commissioners' Court, as claims against the county, and were by said court disallowed and rejected. There was a demurrer to the complaint, which was overruled. The defendant then pleaded—1st, *non assumpsit;* 2d, want of consideration; 3d, illegality of consideration; 4th, that the notes were given for a loan of Confederate money; and, 5th, that the money was borrowed by a court "deriving its powers from the insurrectionary government of Alabama." These pleas were all pleaded "in short by consent," and issue was joined on them all. "On the trial," as the bill of exceptions states, "proof was intro-

VOL. LVI.

[Simpson v. Lauderdale County.]

duced, tending to show that the notes sued on were given for Confederate money; and upon this evidence, the court charged the jury, that if they were satisfied, from the evidence, that the notes sued on were executed upon a loan of Confederate money, the plaintiff could not recover in this action, and they must find for the defendant." The plaintiff excepted to this charge, and he now assigns it as error.

O'NEAL & O'NEAL, R. O. PICKETT, and R. T. SIMPSON, for the appellant.—1. This court has expressly overruled the several decisions of their predecessors, on which the charge of the court below was founded.— *Wyatt v. Evins,* 52 Ala. 285; *Whitfield v. Riddle,* 52 Ala. 467.

2. It can not be assumed that the error in the charge worked no injury to the appellant. A county is a body corporate, and has power to erect and maintain necessary bridges.—Rev. Code, §§ 897, 831–2, 1310. A corporation has power to make any contract, and evidence it by any instrument, that may be necessary to advance the objects for which it was created.—*Strauss v. Eagle Insurance Company,* 5 Ohio St. 59; *Muir v. Louisville & Portland Canal Co.,* 8 Dana, 161; *Dunnington v. Turnpike Co.,* 6 Grattan, 160; *Allen v. Montgomery Railroad Co.,* 11 Ala. 437; 15 Ala. 472, 491. When not specially restricted, it has incidental power to borrow money for any lawful purpose.—14 Barb. 358; 25 Barb. 146; 21 N. Y. 296; 11 Wisconsin, 470; 7 Ohio, 354; 37 Barb. 522.

BRICKELL, C. J.—It is apparent that the Circuit Court, in the charge to the jury, intended to assert the invalidity of executory contracts, of which Confederate treasury-notes were the consideration. Such was the decision of this court on that question, at the time of the trial of this cause in the court below. But there has been a change of decision since that time; and the rule now prevailing is, that such notes are a sufficient consideration to support a contract, made while they were the circulating medium.— *Whitfield v. Riddle,* 52 Ala. 467; *Wyatt v. Evins,* 52 Ala. 285.

2. Conceding that the charge proceeds upon an erroneous view of the law, does not necessitate a reversal. It is too well settled, by repeated decisions of this court, to need a citation of authority, that a mere abstraction will not produce a reversal. A party complaining of error in this court stands as every party must stand, who resorts to legal remedies—he is bound to show a legal right, and injury to, or invasion of that right. He must show, not only error in the proceedings of the primary court, but that the immediate tendency of the error was to his injury. It would only pro-

tract litigation, if this court should reverse judgments, because of errors committed by the primary court, which are harmless to the party complaining; which, if not committed, could not, and ought not to have altered the judgment rendered. If the evidence is undisputed, and all appears of record, and it is clear the plaintiff has no right of recovery, a judgment against him should not be reversed. It is the judgment the law would pronounce on another trial. So, if every fact averred in his complaint is admitted, and it is manifest no recovery of the defendant can be had, the judgment should stand, though rendered by the court for a reason not well founded in law. No presumption of injury, in such case, can arise from any erroneous ruling. The record repels such presumption.

3. Admitting every allegation of the complaint, we think it clear the appellant is not, in any event, entitled to recover. It is not averred that the county was by special statute clothed with the power to borrow money; nor that, in this respect, the powers of the appellee were greater, or other, than those conferred on all the counties of the State, by the general statutory provisions. The direct, immediate inquiry arises, can a county, in the absence of express legislative authority, borrow money, to aid in the exercise of its ordinary powers? Each county is charged with the duty of constructing the necessary bridges within its territorial limits, as it is with the duty of establishing and keeping in repair the necessary highways. The authority and duty is not corporate, but is strictly governmental in its character, conferred and imposed by statute on the county, as a subordinate department of the government of the State. That the authority may be exercised, and the duty performed, the county is clothed with the power of local taxation. A power to borrow money is not conferred; and whenever a necessity has been supposed to exist that such power should by the county be exercised, it has been conferred by special legislative enactment. Counties are clothed with corporate capacity, only for the purpose of enabling them to exercise their powers and duties. Clothing them with that capacity, does not enlarge their power, nor change the character of their duty. They remain mere statutory creations, with a statutory definition of their powers, duties, and liabilities. They are not strictly corporations, but "involuntary political or civil divisions of the State, created by general statute to aid in the administration of government.—*Loper v. Henry County*, 26 Iowa, 264; *Hamilton County v. Mighle*, 7 Ohio St. 109; Dillon's Mun. Cor. § 10. It is for the legislature, in their creation, to determine and declare the extent of their power and

duty, and the mode in which the one shall be exercised, and the other performed. When they prescribe a particular mode, any other is excluded.

Counties, in the exercise of their powers, and in discharging their duties, must necessarily incur debts. It would be impossible to construct a jail, a court-house, or a bridge, without incurring a debt. The obligation to pay will, of necessity, at some time rest on the county. This is contemplated by the statutes; and it is further contemplated that the Commissioners' Court, the instrumentality through which the county acts, shall, by its order on the county treasurer, directing payment, furnish evidence of the indebtedness. When the court makes the order, the duty of payment rests on the treasurer. He is bound to pay such orders, in the order of their registration with him. Under the general statutes, in no other way can county claims be paid, and neither the Commissioners' Court, nor any other tribunal, has power to disturb this order of payment. The treasurer is to be supplied with funds for the payment, by taxation levied by the Commissioners' Court. Taxation, so far as authorized, is the mode, and the only lawful mode, of raising funds for the payment of county debts. The statutes having prescribed it as the mode of supplying the county treasury, and having carefully prescribed the order of its disbursement, any other mode, either by borrowing or otherwise, is excluded. If the county could, as in the case before us, borrow money to pay one debt, to the exclusion of other debts, what prevents it from disturbing and disappointing the order of payment of county claims which the statutes prescribe? Can the lender take priority of those whose claims were registered with the treasurer before his was created, or before his shall have been registered? Whoever contracts with a county, enters into the contract with a full knowledge that taxation is the only means the county has of payment, and that when it is collected, it can be paid out only in the order prescribed by the statutes; and to that source he must look and rely for payment.

We adopt, in reference to counties, what has been so forcibly said by Justice BRADLEY in reference to municipal corporations: "A municipal corporation is a subordinate branch of the domestic government of a State. It is instituted for public purposes only; and has none of the peculiar qualities and characteristics of a trading corporation, instituted for the purposes of private gain, except that of acting in a corporate capacity. Its objects, its responsibilities, and its powers, are different. As a local governmental institution, it exists for the benefit of the people within its corporate limits.

[Simpson v. Lawrence County.]

The legislature invests it with such powers as it deems adequate to the ends to be accomplished. The power of taxation is usually conferred, for the purpose of enabling it to raise the funds necessary to carry on the city government, and to make such public improvements as it is authorized to make. As this is a power which immediately affects the entire constituency of the municipal body, which exercises it, no evil consequences are likely to ensue from its being conferred; although it is not unusual to affix limits to its exercise for any single year. The power to borrow money is different. When this is exercised, the citizens are immediately affected only by the benefit arising from the loan; its burden is not felt until afterwards. Such a power does not belong to a municipal corporation, as an incident of its creation. To be possessed, it must be conferred by legislation, either express or implied. It does not belong, as a mere matter of course, to local governments, to raise loans. Such governments are not created for any such purpose. Their powers are prescribed by their charters, and those charters provide the means for exercising its powers; and the creation of specific means excludes others. Indebtedness may be incurred, to a limited extent, in carrying out the objects of the corporation. Evidences of such indebtedness may be given to the public creditors. But they must look to and rely on the legitimate mode of raising funds for its payment. That mode is taxation."—*Mayor v. Ray*, 19 Wall. 475.

It would be a departure from the statutes which clearly define the powers of counties, and prescribe their duties and liabilities, to imply a power of borrowing money. No necessity exists for the implication, and the legislative history of the State, which abounds with special enactments conferring the power whenever it has been deemed necessary, forbids it.

The charge of the court below, to which an exception was reserved, asserting the appellant was not entitled to recover, whatever may have been the reason inducing it, was correct; and the judgment is affirmed.