# Mayor & Aldermen of Wetumpka *v.* Wetumpka Wharf Company.

*Bill in Equity by Holders of Municipal Bonds, to subject Taxes and Revenues to Payment.*

1. *Judicial notice of charter of municipal corporation.*—The charter of a municipal corporation, and special statutes conferring on it additional powers for special purposes, are public statutes, of which the courts will take judicial notice ; and all persons dealing with the corporation must, at their peril, take notice of the capacity to contract, its limitations and restrictions, thereby conferred on the corporation.

2. *Municipal corporation; power to borrow money, to issue negotiable paper, and to aid private corporations.*—In the absence of an express grant of power, a municipal corporation can neither borrow money, nor issue negotiable paper, nor become a party to such paper, nor become a stockholder in a private corporation, nor incur debts in aid of such private corporation ; but, under the constitution of 1819, there was no inhibition against the grant by the General Assembly of express power to such corporation to incur debts, or to borrow money, or to issue negotiable securities, to be paid by municipal taxation, in aid of works of internal improvements.

3. *City of Wetumpka; powers of corporation under original charter.*—The original charter, or act incorporating the city of Wetumpka (Sess. Acts 1838-9, pp. 44-51), conferred upon that corporation only the governmental powers usually conferred upon municipal corporations at that time for the purposes of local government ; and these did not include any powers for the encouragement of private gain, trading, speculation, or pecuniary profit, except as those objects might be indirectly promoted by a prudent exercise of the powers of local government.

4 *Same; under special acts of 1848 and 1850, in aid of works of internal improvements.*—The act approved February 29, 1848 (Sess. Acts 1847-8, pp. 223-5), authorized the corporate authorities of the city of Wetumpka to issue its bonds, not exceeding $50,000 at any one time, and to appropriate the money arising from their sale to securing the right of way, and constructing a canal, around the lower end of the shoals of the Coosa river ; and the amendatory act approved February 1st, 1850 (Sess. Acts 1849-50, p. 348), extended the amount to $100,000, and authorized the money to be appropriated, under the supervision of the mayor and aldermen, "for any purpose of internal improvement for the benefit of the citizens of Wetumpka." In the case of *Mayor and Aldermen of Wetumpka v. Winter* (29 Ala. 651), this court decided that the said act of 1850 authorized the city to subscribe for stock in the Tallassee

[Mayor, &c., of Wetumpka v. Wetumpka Wharf Co.]

Branch of the Central Plank-Road Company ; and the court now adheres to that decision, so far as it affects the questions involved in the present case.

5. *Same; limitations and restrictions on this power.* -The said act of 1848, by its 1st section, expressly declared : "No bond shall be issued, but upon an entire concurrence of the board of mayor and aldermen, upon a full attendance of all the members of the board, and when there is no vacancy ; which shall be made manifest only by an entry of the order for issuing being made on the minutes of the board, and signed by each member thereof ; nor shall any contract amounting to one hundred dollars, made under any of the provisions of this act, be valid, which is not made under all the restrictions in this section recited." These limitations and restrictions were not relaxed, nor in any manner modified, by the subsequent act of 1850 ; and they are applicable to all bonds issued under that act.

6. *Same; when purchaser is chargeable with notice of such restrictions.*—A purchaser of a bond issued under the said act of 1850, and reciting on its face that it was so issued, is chargeable with notice of these restrictions and conditions, and can not claim protection as an innocent holder, although the bond also recites that it was issued in conformity with the statute.

7. *Assignment of judgment.*—The assignee of a judgment succeeds only to the rights of his assignor, and can not claim protection against equities which were binding on his assignor.

8. *Negotiable paper ; rights of holder, and burden of proof.*—The doctrine has been long settled in this court, as to negotiable paper, that when fraud or illegality in putting it in circulation is shown, or any defense addressed to its consideration, the *onus* is cast on the holder to prove that he acquired it in good faith, before maturity, upon a valuable consideration, and in the usual course of business.

9. *Conclusiveness of judgment.*—A judgment against a municipal corporation, on a bond issued under authority conferred by a special statute, is conclusive on the corporation, as to the validity of the bond, and as to all defenses which might have been urged against it at law ; but, when the owner of the judgment files a bill in equity against the corporation, to enforce a statutory trust, by which the property and revenues of the corporation were pledged and appropriated to the payment of the bonds to be issued under the authority of the statute, the corporation is not precluded by the judgment from showing that the bond was in fact issued in violation of the conditions, limitations, and restrictions imposed by the statute.

APPEAL from the Chancery Court at Wetumpka.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 29th October, 1870, by the Wetumpka Wharf Company, a domestic corporation, having its principal place of business at Wetumpka, against the municipal authorities of the city of Wetumpka ; and sought to subject to the satisfaction of a judgment, which one Howell Rose had recovered against the city on the 15th October, 1855, and which he transferred to the complainant on the 27th October, 1857, certain real estate belonging to the city, with its rents, income, and profits, and to sequester and appropriate the city taxes for the same purposes. The judgment, a copy of which was made an exhibit to the bill, was rendered in an action on a bond, which, as set out in the complaint, was in these words :

"STATE OF ALABAMA, }  In virtue of an act of the legislature
     Coosa County.  }  of Alabama, passed on the 29th day
of February, 1848, authorizing the mayor and aldermen of

the city of Wetumpka to issue bonds under the corporate seal of said city ; and in virtue of an act of the General Assembly of said State of Alabama, passed on the 1st day of February, 1850, amendatory of the act first aforesaid ; the city of Wetumpka promises to pay Howell Rose, or order, the sum of thirty thousand dollars on the 1st day of July, 1855, for value received. In witness whereof, William S. Kyle, as mayor of the city of Wetumpka, and Thomas P. Dale, as treasurer thereof, have hereunto set their hands, and affixed the seal of the city of Wetumpka, this 24th day of June, 1850." (Signed and sealed as specified.)

The bill alleged that this bond was given for money loaned by said Howell Rose to said city of Wetumpka, to pay its subscription to the capital stock of the Central Plank-Road Company; that, in addition to said bond, and as further security for said loan, Rose required the individual bonds or notes of several citizens of Wetumpka, amounting in the aggregate to said sum of $30,000, and a mortgage or deed of trust on the taxes accruing to the city and certain real estate belonging to it, known as " the wharf property ;" that these notes were accordingly given, and this mortgage or deed of trust was accordingly executed, not only for the security of Rose, but also for the security and indemnity of the citizens who had thus given their individual notes ; that the bond to Rose was issued " under the authority conferred upon said corporation by the legislature of Alabama, and in strict conformity to the power so conferred ;" "that when said bond was issued, and said deed of trust executed as aforesaid, there were no vacancies in the board of aldermen of said city, and the issuance thereof was assented to and approved by the unanimous vote of said mayor and aldermen, all of whom joined in the execution of said deed of trust;" and " that said mayor and aldermen were fully authorized and empowered by the charter of said city and the amendments thereto to issue said bond to Rose, and to execute said mortgage or deed of trust to secure the same."

The said deed of trust, a copy of which was made an exhibit to the bill, contained the following recitals and provisions : " *Whereas*, by an act of the General Assembly of the State of Alabama, approved February 29th, 1848, entitled ' An act to amend an act to incorporate the town of Wetumpka, and also by an act of the General Assembly of said State approved February 1st, 1850, amendatory thereof, the mayor and aldermen of the city of Wetumpka are authorized to issue bonds under the corporate seal of said city, and the money arising from the sale of said bonds to be appropriated, under the supervision and direction of the mayor and

aldermen of said city, for any purpose of internal improvement for the benefit of the citizens of Wetumpka: *And whereas*, it is believed that the contemplated plank-road, to be commenced at Wetumpka, on the Coosa river, and to be constructed and laid to Gunter's Landing, or such other eligible points or places on the Tennessee river as may be selected, with such other roads as may be constructed running to the country lying northwardly and above Wetumpka, will add to the prosperity, and prove beneficial to the citizens of Wetumpka ; and, with this view, the mayor and aldermen have subscribed for, and taken in their names, for the use of said city, three hundred shares of stock in the Central Plank-Road Company ; and, to raise the sum of thirty thousand dollars, for the purpose of paying the installments to said Central Plank-Road Company, and the said three hundred shares of stock, the said mayor and aldermen have executed their bond, under the provisions of said two acts of the General Assembly, for the sum of thirty thousand dollars, due and payable on the 1st day of July, 1855, to Howell Rose or order ; to which bond are appended coupons for the payment of a semi-annual interest, at the rate of eight *per cent. per annum*, each being for the sum of $1,200, payable to Howell Rose or order," &c., particularly describing each coupon ; "and the treasurer of the city of Wetumpka having sold said bond at par value, and having received $30,000, the money arising therefrom ; and said sum of $30,000 having been appropriated, under the supervision and direction of the mayor and aldermen of Wetumpka, for the purpose of internal improvement, in the construction of said plank-road, for the benefit of the citizens of Wetumpka: *And whereas*, also, the said Howell Rose, before paying over said sum of $30,000, required further security for the re-payment of the same ; and the following named persons, citizens of Wetumpka and its vicinity, have assumed, as collateral security for the re-payment of said $30,000, the sums specified in their respective notes, as hereinafter set forth, to-wit," specifying the names and amounts ; "all of which notes are dated the 1st July, 1851, and due five years from their date: *Now, in consideration of the premises*, and to secure the payment of said $30,000, together with the interest which may accrue thereon, due and payable semi-annually as hereinbefore provided, as well as to secure, indemnify, and save harmless from all loss, liability, or payment of any sum of money by any of the above-named citizens, for or on account of the said notes so executed as collateral security as aforesaid ; and for the further consideration of ten dollars, paid to the mayor and aldermen of Wetumpka, by Aaron Ready, David C. Neal, and Seth P.

Storrs, the receipt whereof is hereby acknowledged; the
mayor and aldermen of the city of Wetumpka *have bargained,
sold, and conveyed,* and, by these presents, do give, grant, bar-
gain, sell, alien, convey, and confirm, unto the said David C.
Neal, Aaron Ready, and Seth P. Storrs, their successors and
assigns, all the taxes arising from assessments on the real
estate in the corporate limits of said city, together with the
real estate belonging to said corporation, with the rents,
issues, and profits thereof; and the same is hereby pledged
by the said mayor and aldermen, and appropriated for the
final payment of said $30,000, and the interest accruing
thereon, as well as to secure, indemnify, and save harmless
from loss or liability, the citizens herein-before named,
their heirs, executors, administrators, or assigns, for or
on account of the said notes executed by them as afore-
said. And the said mayor and aldermen do hereby bind
themselves and their successors, so far as they are em-
powered to do, that the present rates of wharfage for
all articles or commodities shipped to or from Wetumpka,
or in any manner passed on any of the wharves or landings
in Wetumpka, shall not be diminished, nor shall the tax upon
steamboats, or other water-craft, landing at the points in the
city of Wetumpka wharves, or elsewhere, be decreased from
the present rates, until all of said debt is fully paid off and
discharged, and all the evidences of debt accruing or origin-
ating therefrom be taken up and cancelled. And the said
mayor and aldermen do further sell and convey unto the said
David C. Neal, Aaron Ready, and Seth P. Storrs, the follow-
ing real estate," particularly describing it, "with all the
wharf or wharves, with all and singular the privileges to all
and every wharf or building in said city of Wetumpka, with
all the rights and benefits accruing, or that may arise there-
from in any manner whatever; also, the market-house in
said city of Wetumpka, with all and singular the rights,
privileges, and appurtenances thereunto belonging, or in any
manner appertaining; also, three hundred shares of stock in
the Central Plank-Road Company, together with the rents,
issues, dividends, and profits arising therefrom. *To have and
to hold,*" &c., to the said Neal, Ready, and Storrs, "their
survivors, or assigns, forever. *Provided,* however, if said
coupons are all paid at maturity, and said bond for $30,000
is fully paid at maturity, and none of the citizens hereinbe-
fore named, who have executed said notes as collateral secur-
ity as aforesaid, do pay, or are required to pay, any part of
said notes, but the same are all given up to the respective
makers thereof to be cancelled, without any demand or
claim against any of said makers, for or on account of any

of said notes ; then this deed of conveyance and trust to be void, and of none effect. But, in default of payment of any of said coupons as they become due and payable respectively, or if said bond for $30,000 is not paid at maturity; then, in either event, the said David C. Neal, Aaron Ready, and Seth P. Storrs, their survivors or assigns, are hereby fully authorized and empowered to seize and take possession of all or any portion of said bargained and described premises, the wharf, and wharfing privileges, with the rights and immunities thereof, and the said three hundred shares of stock in said plank-road company, with the dividends thereof, or so much of said mortgaged and conveyed premises, rights, privileges, and appurtenances, as may be necessary to pay off and fully discharge any amount due and unpaid on said coupons, or bond for $30,000 ; and, after advertising a sale for thirty days, in a public paper printed at Wetumpka, may proceed to sell sufficient to pay off the amount of such coupons as are then due and unpaid, as well as so much of said $30,000 bond as is then due and unpaid; first paying all expenses incurred in making a sale, or in executing the trusts aforesaid. And in case any of the above-named citizens, who have executed their notes as aforesaid, shall, of their own accord, or by compulsion of legal process, pay, or cause to be paid, any of said collateral notes so given as aforesaid; then, on application of such citizen, who has paid, or caused to be paid, any of said notes, or any part thereof, his executors, administrators, or assigns, said David C. Neal, Aaron Ready, and Seth P. Storrs, their successors or assigns, shall seize and take into immediate possession the above-bargained premises, wharfage, stock, dividends, rents, issues, and profits arising therefrom, with all the privileges and appurtenances thereof, or so much as may be necessary to pay off, indemnify, and save harmless from the payment of principal and interest and cost, accrued on account of any of said notes, and sell the same upon the same notice, terms and time, as hereinbefore above provided ; all sales to be made at the market-house in Wetumpka, and the proceeds applied to the payment of costs and necessary expenses of carrying out and fully executing said trust, and to the full payment and indemnity of all and any amount which has been paid for or on account of any of said notes so given as aforesaid ; the same to be paid by said David C. Neal, Aaron Ready, and Seth P. Storrs, their survivors, or assigns," &c. " And the said mayor and aldermen do hereby stipulate and agree to pay from the revenues and resources of the city of Wetumpka such amounts as can be realized and appropriated, having due regard to the ordinary expenses and other debts of the

city, at least once in every six months, to the extinguishment of the debts due or not due, as the funds accumulate in the city treasury. And the said Howell Rose, for himself, his executors, administrators, or assigns, does hereby stipulate and agree to receive any amount which may be paid by the mayor and aldermen of Wetumpka, or any other person or persons, on account of said debt for $30,000, and interest, or offered within three days of the first days of January or July in each and every year, from the date hereof, until the full and final payment of the said debt; and if any payment is offered to be made, and is paid, upon any claim before maturity, said Rose agrees to discount the interest on whatever amount is paid upon debt not due, from time of payment until the maturity of said debt, at the rate of eight *per cent. per annum.* And the said David C. Neal, Aaron Ready, and Seth P. Storrs, trustees, hereby bind themselves, so far as in their power, to carry out the trust herein created, to the best of their skill and ability. In witness whereof," &c. (Signed by the mayor and six aldermen, and countersigned by the city clerk and treasurer, with the seal of the city of Wetumpka affixed; also, by said Howell Rose, Neal, Ready, and Storrs.)

The bill alleged, also, that default was made in the payment of the said bond for $30,000, and thereupon, on the 12th August, 1858, David C. Neal, the sole surviving trustee, sold the property conveyed, in strict compliance with the terms of the deed; that at said sale Benjamin Trimble became the purchaser of a part of the real estate, "known as the wharf property," and with it the right of collecting wharfage dues, and received the trustee's deed for the same; that the money realized at the trustee's sale was applied in part payment of the bond to Rose, and the judgment afterwards recovered on the bond by Rose was for the residue only; that Trimble took possession under his purchase, and soon afterwards sold and conveyed to the complainant; and that afterwards, on the 13th July, 1867, the complainant entered into a written agreement with the mayor and aldermen of the city of Wetumpka, for the adjustment and settlement of all these matters, under authority conferred on said mayor and aldermen by a special act of the legislature of Alabama; a copy of which agreement was made an exhibit to the bill, and which was in the following words:

" *This agreement*, made and entered into this 13th day of July, 1867, between the mayor and aldermen of the city of Wetumpka, of the first part, and the Wetumpka Wharf Company, of the second part, *witnesseth*," &c.; reciting the execution of the bond to Howell Rose, the execution of the

mortgage or deed of trust for its security, the sale under the deed by the trustee, the purchase by Trimble, the conveyance by Trimble to the complainant, and the rendition and assignment of the said judgment recovered against the city by Rose; and then proceeding as follows: "*And whereas*, by an act entitled 'An act to authorize the corporate authorities of Wetumpka to subscribe to the capital stock of the South and North Alabama Railroad, the Bank of Alabama, and for other purposes,' approved February 25, 1860, the General Assembly of Alabama did authorize the corporate authorities of said city to issue bonds, and to levy an additional tax of one-half of one per cent. on the real estate in said city, by and with the consent of a majority of said real estate [owners], for the purpose of paying the indebtedness of said city: *And whereas*, on the 8th day of May, 1867, the said corporate authorities did levy said tax, and order an election to be held on the 21st day of May, 1867; at which said election, a majority of the real estate owners did vote in favor of said tax, and the same is now a law of said corporate authorities: *And whereas*, the said Wetumpka Wharf Company, actuated by a spirit of liberality, and a desire to see the said city of Wetumpka free from debt, have agreed to settle the claims it holds against said city, or the mayor and aldermen of said city, on the following terms and conditions: The said mayor and aldermen have caused to be duly executed twenty bonds or notes, each for the sum of $1,562, due and payable as per list hereto attached; which bonds the said company hereby agrees to accept in full payment for the said judgment above mentioned, and for any and all interest which said company has on said wharf; *provided*, each and all of said bonds shall be promptly paid in full at the date of maturity; and as soon as said bonds are delivered to said Wetumpka Wharf Company, said company agrees hereby, in order to assist said mayor and aldermen in paying said bonds, to put the said mayor and aldermen in possession of said wharf, giving them full control over it, its rents and receipts; on condition, that they will adopt and collect the same rates of wharfage as are now charged for wharfage at Montgomery; and on the further condition, that the said bonds shall each be promptly paid at maturity. But, should the said mayor and aldermen of Wetumpka fail to pay any one of said bonds at maturity, then, and in that case, they hereby agree at once to surrender to said company the said wharf, its rents and receipts; and this agreement is, in that event, declared null and void. But, if the said bonds should all be paid at maturity, then, and in that event, the said company hereby agrees to make a full surrender of all its

title and interest in and to said wharf and said judgment, to the said mayor and aldermen, in such form as they may desire; *provided*, further, that for any payments the said city may make of said twenty bonds, she shall be entitled to a credit on said judgment, for the amount thus paid. And it is further agreed, that should any of said bonds not be paid on the day of maturity, then, and in that case, the said mayor and aldermen shall be allowed sixty days in which to pay said bond, before they shall be required to surrender the possession of said wharf, its rents and receipts, into the hands of the said company, and before this contract shall be declared void. Signed in duplicate, this 13th July, 1867," by *W. A. Allen*, as mayor of Wetumpka, and Richard Smoot, as chairman of the Wetumpka Wharf Company.

The bill further alleged, that the mayor and aldermen had full power and authority to enter into this contract; that the wharf property was delivered to them pursuant to the terms of the contract, and they continued in possession up to the filing of the bill; that they paid five of the bonds, those which first matured, but wholly made default in the payment of the others; that they refused to deliver up the wharf property, on the complainant's demand after their default, but continued to collect the rents and profits, wharfage dues, and taxes on the real estate, and appropriated them to other purposes, and that the city is insolvent The prayer of the bill was for an injunction, restraining the mayor and aldermen from further collecting or receiving the taxes on real estate in the city, or the rents, profits, issues, and wharfage dues, arising or accruing from the wharf property; for the appointment of a receiver, with power to collect and receive the said moneys; that the taxes on real estate might be sequestrated, and collected under the order and direction of the court, through the corporate authorities or otherwise, and applied to the satisfaction of the complainant's debt; also, for an account, and for general relief.

J. B. H. Smith, a citizen of Maryland, was joined as a defendant to the bill, with the mayor and aldermen, on an allegation that he " claims to hold certain other bonds issued by said mayor and aldermen of the city of Wetumpka, and claims some interest in the real estate and taxes of said city; the precise nature and extent of which claim are unknown to complainant, but it is subordinate to the complainant's claim herein set forth." An answer was filed by said Smith, alleging that he was the owner and holder of eleven bonds issued by the corporate authorities of the city of Wetumpka, to pay the city's subscription to the capital stock of the Tallassee Branch of the Central Plank-Road Company; that

said bonds, with the others issued for that purpose, each for $500, were issued by said mayor and aldermen under authority conferred on them by an act of the General Assembly approved February 29th, 1848, and the amendatory act approved February 1st, 1850; "that said bonds were issued upon an entire concurrence of all the members of the board of mayor and aldermen of said city, upon a full attendance of all the members of the said board, and when there was no vacancy, which was made manifest by an entry of the order for issuing said bonds being made on the minutes of said board, and signed by each member thereof;" that these bonds were acquired by the respondent for valuable consideration, and were past due and unpaid; that the wharf property and other real estate belonging to the city, and also the taxes on real estate, were, by the terms of the statutes under which the bonds were issued, pledged for the security and payment of all these bonds, as well as the bond to Howell Rose; that these facts were well known to the complainant, or to the persons composing the company, when they acquired their claims against the city; and that the respondent's equity, under the facts stated, was at least of equal dignity with the equity asserted by the complainant. He prayed that his answer might be taken as a cross-bill, under the rules of practice; that a lien might be declared in his favor, to the extent of the amount due on the bonds held by him, on the real estate described in the original bill, with the rents, issues, and profits thereof; that the complainant in the original bill might be compelled to account for the moneys received and collected from these sources; that the property might be sold, and the proceeds of sale appropriated, under the order of the court, according to the provisions of the statutes under which the bonds were issued.

A copy of one of the bonds held by Smith was made an exhibit to his answer, and was in these words, though in a different form: "United States of America; State of Alabama. City of Wetumpka Stock for subscription to the stock of the Tallassee Branch of the Central Plank-Road Company. A Loan of Fifteen Thousand Dollars. Passed by the unanimous vote of the Mayor and Aldermen of the City of Wetumpka, on the 19th day of June, 1851. By special authority of the State of Alabama, by an act passed January 10th, 1839, and amended February 1st, 1850, the Mayor and Aldermen of the City of Wetumpka acknowledge themselves to be indebted to the Tallassee Branch of the Central Plank-Road Company, or bearer, for value received, in the sum of Five Hundred Dollars; which sum said Mayor and Aldermen of the City of Wetumpka promise to pay to

the said Tallassee Branch of the Central Plank-Road Company, or to the holder hereof, at the Bank of America, in the city of New York, on the 1st day of July, in the year 1856, and also interest thereon, at the rate of eight *per cent. per annum*, semi-annually, on the first day of each January and of each July ensuing the date hereof, until the said principal sum shall be paid, on the presentation of the annexed Interest Warrants at said Bank. And said Mayor and Aldermen of the city aforesaid further agree, that this obligation, and all rights and benefits arising therefrom, may be transferred by general or special indorsement, or by delivery, as if the same were a note of hand payable to bearer. In testimony whereof, the said Mayor and Aldermen of the City of Wetumpka have hereunto caused to be affixed their corporate seal, and these presents to be subscribed by the Mayor, this 1st day of July, 1851."

An answer to the bill was filed by the mayor and aldermen of Wetumpka, in which they admitted the borrowing of the money from Rose, and the execution of the bond for its repayment; but they denied that this was done in pursuance of the powers conferred on the corporate authorities by the special statutes referred to, or in compliance with the requisitions of the statutes; and alleged, on the contrary, that the limitations and restrictions imposed on them by the statutes, which were stated at length, were violated and disregarded. They admitted, also, the recovery of the judgment by Rose, its assignment to the complainant, the execution of the conveyance to the trustees, the sale by the surviving trustee, at which Trimble became the nominal purchaser, and the subsequent agreement between the complainant and said corporate authorities; but they denied that any of those things were done in good faith, and alleged that they were effected by fraud and collusion between said Rose and the several persons composing the Wetumpka Wharf Company, who also constituted a majority of the board of mayor and aldermen of the city; and they stated with particularity the facts connected with these alleged frauds. They also filed an answer to the cross-bill of Smith, and denied the validity of the bonds held by him, alleging that they were issued in violation of the express provisions of the statutes to which they refer.

A temporary injunction was granted by the chancellor, on the filing of the bill; and after answer filed, he refused to dissolve the injunction on motion, either for want of equity in the bill, or on the denials of the answer, which was not under oath. A receiver was afterwards appointed, by consent, and another receiver was substituted during the pro-

gress of the cause. No testimony was taken by any of the parties. The cause was submitted for final decree on the pleadings and exhibits attached. The chancellor held, that the bond given to Howell Rose, and the several bonds held by Smith, were valid and binding on the city of Wetumpka, and could not be avoided on the grounds set up in the answer of the corporate authorities; that the deed of trust to Neal and others was void, for want of authority in the mayor and aldermen to execute it, and all subsequent proceedings under it, and claims founded on it, were also void and of no effect; that the statute itself created a pledge and appropriation of the taxes and real estate of the city for the payment of the bonds, which the court would enforce in favor of the holders of the bonds. He therefore ordered an account to be stated by the register, to ascertain the amount due to the complainant and Smith respectively, charging the complainant with all payments made on the judgment in favor of Rose, and with the rents and profits of the wharf property while in its possession; and on the coming in of the register's report, which he confirmed, he rendered a decree against the city, in favor of the complainant, for $27,301.77, and in favor of Smith for $14,350.09; and declared a lien in their favor "upon the taxes arising from assessments on real estate in the corporate limits of said city, and upon the real estate belonging to said corporation, with the rents, issues, and profits thereof, until the said sums, with interest and costs, shall be fully paid and satisfied, and that said lien be enforced by a sequestration of said taxes," &c.

From this decree the mayor and aldermen of Wetumpka appeal, and here assign it as error.

J. FALKNER, for the appellant.

THOS. H. WATTS, and D. CLOPTON, contra.

BRICKELL, C. J.—The cause was heard on the pleadings and exhibits, no other evidence being introduced than that which is to be found in the recitals contained in the exhibits to the original bill, and the cross-bill filed by Smith. The averment of the original bill is, that the bond of the city of Wetumpka, issued and payable to Howell Rose, was for money advanced and loaned by Rose to the mayor and aldermen, to pay the subscription of the city to the capital stock of the Central Plank-Road Company. It is further averred, that the bond was issued under authority conferred by the legislature, and in strict conformity to the power so conferred. The bond is under the corporate seal, and on its

[Mayor, &c., of Wetumpka v. Wetumpka Wharf Co.]

face recites that it is issued *in virtue of an act of the legisla-*
*ture of Alabama, passed on the 29th day of February, 1848,*
*authorizing the mayor and aldermen of the city of Wetumpka*
*to issue bonds under the corporate seal of said city, and in virtue*
*of an act of the General Assembly of said State of Alabama,*
*passed on the first day of February, 1850, amendatory of the*
*act first aforesaid.*

The averments of the cross-bill are, that the eleven bonds
held by Smith are part of a series of bonds, amounting in
the aggregate to fifteen thousand dollars, which were issued
in sums of five hundred dollars each, to pay the subscrip-
tion of the city to the stock of Tallassee Branch of the Cen-
tral Plank-Road Company; that the bonds were issued *upon*
*an entire concurrence of all the members of the board of mayor*
*and aldermen of said city of Wetumpka, upon a full attend-*
*ance of all the members of the said board, and when there was*
*no vacancy; which was made manifest by an entry of the order*
*for issuing said bonds being made on the minutes of said board,*
*and signed by each member thereof.* One of the bonds is exhib-
ited, and on its face recites as follows: "*City of Wetumpka*
*stock. For subscription to the stock of the Tallassee Branch of*
*the Central Plank-Road Company. A loan of $15,000.00.*
*Passed by the unanimous vote of Mayor and Aldermen of the*
*City of Wetumpka, on the 19th day of June, 1851. By special*
*authority of the State of Alabama, by an act passed January*
*10th, 1839, and amended February 1st, 1850." &c.*

The answer to the original bill, which, by consent, was
taken also as an answer to the cross-bill, sets out the first
section of the act of 29th February, 1848 (to which further
reference will be made); and in express terms denies that
the bond to Rose was issued in conformity to it. The denial
proceeds further, and negatives the issue of the bond upon
an entire concurrence of the board of mayor and aldermen,
and the manifestation of such concurrence by an entry of the
order for issuing on the minutes of the board, and the sign-
ing of such entry by the mayor and aldermen. This denial,
under the agreement accepting the answer as an answer to
the cross-bill, extends to the bonds of Smith.

The burden of proving every material fact, upon which
his case primarily depends, if it is put in issue, rests upon
the plaintiff, in courts of law and equity. If it be essential
to the relief claimed by the plaintiff in the original, or cross-
bill, that it should be shown *that the bonds preferred as debts*
*against the city were issued with the entire concurrence of the*
*board of mayor and aldermen, when there was no vacancy in*
*the board, and that this concurrence was made manifest by an*
*entry on the minutes of the board signed by the mayor and al-*

*dermen,* the burden of proving the fact rests on them. How far it is essential, and whether the fact is proved, are of the important questions to be decided.

The original charter, or act incorporating the city of Wetumpka, was approved January 30th, 1839.—Pamphlet Acts, 1838–9, pp. 44–51. It varies from the usual charters of municipal corporations, when, as they were at the time of its enactment, the subjects of special legislation, in no other respect than in conferring corporate powers adapted to the situation of the city, on and intersected by the Coosa river, a navigable water-course. The territorial limits of the city are defined; the name and style of the corporation are declared to be the mayor and aldermen of the city of Wetumpka, with capacity to sue and be sued by that name, and to purchase, receive, hold, grant, alien, or assure property, real, personal or mixed; to have and use a common seal, *and to do and perform all and singular such acts as are incident to bodies corporate.* The qualifications of the mayor and aldermen are prescribed, and the mode of appointing them, an election annually by the qualified voters of the city. The powers of the mayor and aldermen are carefully and specifically defined and enumerated.; and all relate to the internal government of the city, the promotion and preservation of its peace, order, and health. A limited power of taxation is conferred, which was not to exceed annually one *per-centum* upon unimproved, and one fourth of one *per-centum* on improved real estate. The mayor and aldermen had power to appoint, and remove at pleasure, a clerk and treasurer, and to require of them such bond and security as they deemed necessary.

Municipal corporations are strictly of political institution; they are but parts of the internal government of the State. All their purposes and objects are public, and the power they exercise, if not delegated to them, would reside in the General Assembly, or in some other department of the government. There is not a power the city could exercise through the agency of the mayor and aldermen, under the original act of incorporation, that is not governmental; and these powers are confined in the sphere of operation to the territorial limits of the city. As created, the corporation falls precisely within the definition of a municipal corporation, given in *Cuddon v. Eastwick,* 1 Salk. 192, " an investing the people of the place with the local government thereof." Private gain, trading, speculation, or the derivation of pecuniary profit, are not purposes or objects within the contemplation of the charter; and no powers are conferred to stimulate, encourage, or advance such purposes, further than the incidental encouragement and advancement, which may fol-

low a prudent exercise of the powers of local government. Because of their public character, and of their relation as agencies to the government of the State, it is not necessary to plead or prove their acts of incorporation. Courts take judicial notice of them, as they do of other public, general statutes.—*Case v. Mayor*, 30 Ala. 538; *Smoot v. Mayor of Wetumpka*, 24 Ala. 112. Being public statutes, of which all are supposed to be informed, all who may enter into transactions with the corporations, must, at their peril, take notice of the capacity to contract which is conferred; and if there is a want of capacity, they are in a condition analogous to that of those who deal with infants, or married women, or other persons not *sui juris*.

An implied or an incidental power to issue, or to become a party to negotiable paper, or to borrow money, could not be claimed by the city, under the original charter. The power is not expressly conferred; and it could not be deemed appropriate to the execution of the powers which are conferred. A certificate of indebtedness, a warrant on the treasury, would be the most appropriate form (as it was when the charter was enacted, the usual, and probably, the only form adopted), which could be given to the evidence of the liability of the city, if it was found necessary to contract a debt. Such a certificate, or warrant, not having the elements of negotiability, it is unimportant into whose hands it might pass, or on what consideration, could not acquire the immunity of commercial paper, cutting off defenses which the city could make against its enforcement. If its officers and agents issued them fraudulently, or in negligence, the fraud or negligence would furnish just ground of defense against their enforcement; or, if the consideration on which they are founded failed, or any other just ground of defense existed, it would be as availing against a subsequent holder, as against the party to whom they were issued.—*N., M. & C. R. R. Co. v. Dunn*, 51 Ala. 128. In this case, following *Police Jury v. Britton* (15 Wall. 566), this court held, that a municipal corporation, not *expressly clothed with power to borrow money, or to issue negotiable paper*, could not give to the evidence of its debts the form and immunity of negotiable paper. It was said, "Other means, better adapted to the execution of the corporate powers, and less hurtful to the inhabitants of the city, can be found for the consummation of all corporate purposes."—See, also, *Mayor &c. v. Ray*, 19 Wall. 468.

Private corporations, especially if created for trading purposes, may have an incidental or implied power to borrow money. There is but a limited analogy between such cor-

porations, and corporations like that of the city of We-
tumpka, created wholly for civil and political purposes. The
latter corporations have no capital, and no corporate proper-
ty, except that which is held for public uses. Debts may be
contracted by them; but the only source of payment is the
revenue derived from taxation, or from charges imposed on
persons under their authority making individual use of the
corporate property, such as markets, &c. Whoever contracts
with such corporations must know that from these sources
only can they derive the means of payment; and the just
presumption is, that he looks to and relies alone upon them
for the satisfaction of his demand.—*Simpson v. Lauderdale*,
56 Ala. 64. The power to borrow money is essentially dif-
ferent from the power to contract debts in execution of the
purposes of municipal corporations. In *Mayor v. Ray, su-
pra*, it was said on this question: "Such a power does not
belong to a municipal corporation, as an incident of its crea-
tion. To be possessed, it must be conferred by legislation,
either express or implied. It does not belong, as a mere
matter of course, to local governments, to raise loans. Such
governments are not created for any such purpose."

The most efficient safeguard which the community have
against the abuse of corporate power, by the agents and offi-
cers of municipal corporations, necessarily intrusted with
its exercise, is the short official term, and their direct respon-
sibility to their constituents. The greatest security against
waste and extravagance is, that the expenditures and debts
of the corporation are to be satisfied from taxation, which
the constituents must bear. If money could be borrowed,
experience admonishes us that taxation would be postponed,
official responsibility evaded, the vigilance of the constituents
relaxed, corporate powers abused, and the corporate govern-
ment would often become a grievous burden, instead of ad-
vancing the interests and convenience of the people within
its jurisdiction.

The whole legislative policy of the State has indicated dis-
favor of commercial paper, even as employed by individuals
in private business transactions. The character of paper
usually employed has been shorn of all immunities attend-
ing commercial paper; and whoever acquires it is forewarned
that he succeeds only to the rights of his transferror, and is
subject to every defense which the party sought to be
charged, would be entitled to make, if there had not been a
transfer. When the legislative power creates a municipal
corporation, for the purposes of local government, conferring
powers in the exercise of which debts may be incurred, it is
easy to say that the corporation may give these debts the

[Mayor, &c., of Wetumpka v. Wetumpka Wharf Co.]

form of negotiable paper, if it is intended that it should. In the absence of the grant of the power, an implication of it would infringe the policy to narrow the use of such paper in ordinary transactions, which the general statutes clearly manifest.

The power of taxation in the charter of the city of Wetumpka, as it was in the charters generally which were enacted in that period of our history, was limited; and from taxation only the means of paying debts could be derived. The debts could properly originate only in the execution of the purposes of the incorporation. If a power to borrow money was deemed incidental, or should be implied, it would be difficult, if not impossible, to confine the debts to these purposes. There would be no limit of the power, as to third persons who, in good faith, should make the loans, other than the discretion of the corporate officers and agents; and the money could easily be diverted from the purposes and objects of the corporation. A careful examination of our legislation, prior and subsequent to the original incorporation of the city of Wetumpka, shows that, whenever it was intended municipal corporations, or counties, which are *quasi* municipal corporations (and these embrace all our public corporations), should have power to issue negotiable paper, or to borrow money, the power has been expressly conferred, or other than governmental power has been conferred, which could not be advantageously exercised without the use of such paper, or without obtaining loans. The result is, that the bonds now sought to be enforced were unauthorized by the original act of incorporation: the bond to Rose, because its consideration was money borrowed, by the mayor and aldermen; the bonds held by Smith, for the same reason, and because they are negotiable paper.

Whatever may be the diversity of opinion, as to the implied or the incidental power of a municipal corporation to borrow money, or to issue or become a party to negotiable paper, there is but little, if any, that without an *express grant of power* the corporation can not become a shareholder, or a stockholder, in a private corporation, or borrow money, or incur debts, to aid extraneous objects.—Dillon on Mun. Cor. § 106; *Town of South Ottawa v. Perkins*, 94 U. S. 262; *Town of Cotoma v. Eanes*, 92 U. S. 284. Authority to subscribe for the stock of the Central Plank-Road Company, and of the Tallassee Branch of the road, and to borrow money, or to issue negotiable paper to pay the subscription, is claimed under the act of February 29th, 1848, and the act entitled "an act amending the act incorporating the City of Wetumpka," approved February 1st, 1850.

The first section of the act of 1848 authorizes the mayor and aldermen to issue bonds, under the corporate seal of the city, signed by the mayor and treasurer, in sums not less than one hundred dollars each, to bear such rate of interest, not exceeding eight *per-cent. per annum*, and to be redeemed at such time and upon such terms as were expressed in the bonds; the entire amount issued not to exceed at any one time fifty thousand dollars. The section proceeds : · "No bonds shall be issued, but upon an entire concurrence of the board of mayor and aldermen, upon a full attendance of all the members of the board, and when there is no vacancy; which shall be made manifest only by an entry of the order for issuing being made on the minutes of said board, and being signed by each member thereof; nor shall any contract amounting to one hundred dollars, made under any of the provisions of this act, be valid, which is not made under all the restrictions in this section recited." The second section declares the purposes to which the money arising from the sales of the bonds must be appropriated—the securing the right of way, and constructing a canal, around the lower end of the shoals of the Coosa river; and confers on the treasurer authority to sell the bonds at par value. The third section reads : "That taxes arising from assessments on the real estate in the corporate limits of said city, together with the real estate belonging to said corporation, with the rents, issues, and profits thereof, be, and the same are hereby, pledged and appropriated for the final payment of all bonds issued under the provisions of this act."—Pamph. Acts 1847–8, pp. 223–5.

The act of February 1st, 1850, reads : "That the amount of bonds issued under the provisions of the first section of said act may be extended to one hundred thousand dollars, and the money arising from the sale of said bonds may be appropriated, under the supervision and direction of the mayor and aldermen of Wetumpka, for any purpose of internal improvement for the benefit of the citizens of Wetumpka."—Pamph. Acts 1849–50, p. 348.

These statutes were enacted, and the bonds now preferred as claims against the city were issued, while the constitution of 1819 was the fundamental law. That constitution did not inhibit the General Assembly from authorizing municipal corporations to become stockholders in private corporations, and aiding in the construction of railroads, plank-roads, or other improvements, though they extended beyond the corporate limits, or even beyond the State; and the borrowing of money, or the issue of negotiable securities, which were to be paid by municipal taxation, to accomplish such pur-

poses.—*Stein v. Mobile*, 24 Ala. 591; *Gibbons v. Railroad Company*, 36 Ala. 410.

In *Mayor and Aldermen of Wetumpka v. Winter*, 29 Ala. 651, the action was founded on the breach of the condition of a bond executed by Winter to the mayor and aldermen, by which Winter, in consideration of the bonds of the city, agreed to pay the subscription of the city to the Tallassee Branch of the Central Plank-Road Company, as the company should require payment. The complaint set out the act of February 29th, 1848, and that of February 1st, 1850; and a demurrer to it assigned several causes, none of which seem to have been considered, except that which questioned the validity of the bonds of the city. The complaint averred, with great particularity, the issue of the bonds of the city, under all the restrictions contained in the first section of the act of 1848. The opinion of the court is limited expressly to the facts as disclosed by the record. It was held, that the act of February 1st, 1850, authorized the city to subscribe for the stock in the Tallassee Branch of the Central Plank-Road Company; that the expression "*internal improvements*," as found in that act, did not mean improvements within the city, but works within the State,—improvements of the highways and channels of commerce; and it was the incidental benefits arising from them to the citizens of Wetumpka which the act contemplated.

Without inquiring whether we would concur in this view, if the question was first presented, we adhere to it, so far as it affects any question now involved. The mayor and aldermen, of consequence, had power to subscribe to the stock of the Central Plank-Road Company, and of the Tallassee Branch, and to issue and sell the bonds of the city to pay such subscription. But, in the exercise of the power, they were bound and limited by the provisions of the act of February 29, 1848. The act of February 1, 1850, does not remove or relax any of the conditions, restrictions, or limitations, which were imposed by the act of February 29, 1848. Of the latter act, there is no other change or modification, than in conferring on the mayor and aldermen power to appropriate the money arising from the sale of the bonds of the city, to other purposes than the construction of a canal, and increasing the amount of bonds which could be issued, from fifty to one hundred thousand dollars. Under the acts, no bond could be issued, or, if issued, no bond was valid, unless the *order for issuing was made with the entire concurrence of the board of mayor and aldermen, upon a full attendance, when there was no vacancy; which could be made manifest*

*only by an entry on the minutes of the board, and being signed by each member thereof.*

The power of the General Assembly to confer on the city of Wetumpka this extraordinary power, foreign to the purposes of its original incorporation, the decisions of this and other courts, State and Federal, had sanctioned. Having that power, the General Assembly had as ample power to declare the conditions and limitations upon and under which the city could exercise the power delegated. It had, also, plenary power to declare that, if these conditions and limitations were not observed, the acts and contracts of the city should not be valid; and it had the power to declare what should be the evidence, *the sole and exclusive evidence, of their observance.* The limitations and restrictions imposed, were intended to protect the city from an abuse, or an injudicious exercise of the power conferred. A majority of the board of mayor and aldermen were intrusted with the exercise of the ordinary powers of the corporation, and the evidence of their acts might, in some cases, remain in parol, or be entered on the minutes of the board. If entered there, no particular designation of the individuals concurring, or declining to concur, would be essential. A majority was not intrusted with the power of issuing bonds under these acts. A concurrence of the whole number constituting the board was necessary. The presence of all the members of the board of mayor and aldermen is not necessary in the exercise of the ordinary corporate powers; and though vacancies may occur, the board has all such powers, unless reduced below a quorum for the transaction of business. But the exercise of these powers would not involve the consequences which would follow from an exercise of the extraordinary power these statutes confer. Therefore, the General Assembly cautiously limited the exercise of the power, and, not satisfied with the limitation, proceeded further, and declared, if the observance of the limitation was not manifested in a particular mode, all contracts made, or purporting to be made, in the exercise of the power, should not be valid. Now, courts are bound to take notice of these statutes, of all their terms, and to measure every contract which they are required to enforce, and which is supposed to derive validity from them, by inquiring whether they conform to these terms. Those who enter into such contracts, and claim benefits from them, can not escape the obligation and consequences of the maxim, that every man is presumed to know the law. No representation, no admission, no declaration, made by the officers of the corporation, can absolve from this obligation. As between natural persons, with whom no peculiar relations exist,

admissions, declarations, or misrepresentations of the law, do not relieve from, or create liability. With the same knowledge of the law, which can be imputed to these officers and agents, those who deal with them are chargeable; and certainly there is no indication in the statutes of a purpose (but there is an expression of a contrary purpose) to invite strangers to rely on the representations of the mayor and aldermen, or of the mayor and treasurer. These limitations are vain and useless—they are a mockery of right and justice, a snare and delusion to the people who reposed upon them, if they are to be evaded upon the pretense, that the bonds now sought to be enforced against the city, though not·issued in conformity to them, are in the hands of *bona fide* holders, who have relied upon the acts of the mayor and treasurer in issuing them, and declaring on the face of the bonds that they were issued in conformity to the statutes. There can be no holder of the bonds, who is not charged with knowledge of the statutes; none not deriving title from, and tracing it to the statutes, which are the origin and foundation of his right. The reference in the bond to Rose, to these statutes, directed attention and inquiry to them as the authority for the making of the bond. The reference in the bonds to Smith is very inaccurate, as to the date of the statutes. There was no statute of January 19th, 1839, referring to the city of Wetumpka. But, assuming that was a clerical error, and the act intended was, as his cross-bill in effect avers, the act of February 29, 1848, the reference would charge him with notice of the statutory limitations and conditions. A purchaser of real estate is charged with notice of all that appears on the face of the title-deeds of his vendor, and protection against equities of which these give notice is never afforded him.

If the limitations, or conditions, or restrictions, as they are termed in the statute, are not observed in the making of the contracts it authorizes, it is declared such contracts are not valid. This is but another form of expressing that they are *void*. When contracts are by statute pronounced *void*, they cannot become good in the hands of subsequent holders, though bad faith may not be imputable to such holders, and they may have acquired them for value.—1 Parsons on Notes and Bills, 218; *Saltmarsh v. Tuthill*, 13 Ala. 404; *Anthony v. Jasper ·County*, 4 Dillon, C. C. 143.

But neither the appellee nor Smith can be regarded as entitled to the immunity and protection afforded the *bona fide* holder of commercial paper. The appellee is the assignee of the judgment in favor of Rose, and from that assignment derives its rights. The assignee of a judgment succeeds

only to the rights and equities of the assignor—he stands in his place, and is affected by every claim the defendant in the judgment could prefer against him.   The contract was made with Rose, and the bond issued and made payable to him.   As between the immediate parties to a negotiable instrument (if it could be conceded that was the character of the bond to Rose), not only the consideration is open to inquiry, but it is subject to every defense which could be made against any other instrument.   It is only when there is a transfer, a negotiation of the instrument, to another party, between whom and the maker, or prior parties, no privity exists, that an inquiry into the consideration is foreclosed, or defenses are cut off.—1 Dan. Neg. Ins. § 769.

Nor can Smith claim protection as a *bona fide* holder, though the bonds held by him are negotiable instruments. Whatever may be the course of decision elsewhere, the doctrine unequivocally established in this court many years ago, and reaffirmed by repeated decisions, is, that if fraud, or illegality in putting in circulation negotiable paper, or a defense addressed to its consideration, is shown, the *onus* is cast on the holder, claiming protection against such defenses, to prove that in good faith, before maturity, in the usual course of business, upon a valuable consideration, he acquired the paper.—*Ross v. Drinkard*, 35 Ala. 434.   No such proof has been made by Smith; and he can stand upon no other ground, than that the original holder of the bonds would have occupied.

There is a plain difference between this case and that large class of cases decided by the Supreme Court of the United States, in which municipal bonds were enforced, though there was fraud or irregularity in their issue, the right of a *bona fide* holder having attached.   *First*, the rights of a *bona fide* holder are not, as we have seen, involved. *Second*, it is not fraud, or irregularity merely, in the issue of the bonds.   The power to issue them never existed—the facts out of which the power could arise never occurred. No officer of the corporation, no particular person, or special tribunal, was clothed with the power or the duty to ascertain whether the facts had occurred, and, by an expression or declaration, to inform others of their occurrence.   There was but one mode of manifesting them, and that mode the statute declares is exclusive.   There can be, in principle, no difference between the want of power, and a grant of power upon a condition which is never performed.   Until the condition is performed, the power cannot pass.   And in this case, until the entire concurrence of all the board of mayor and aldermen, entered on the minutes of the board, signed

by all, the city was without power to issue these bonds. That was the condition precedent, prescribed clearly and emphatically by the General Assembly; and performance of that condition could be made manifest only by the entry on the minutes, signed by the mayor and aldermen. The mayor and treasurer may have declared that the board unanimously approved the subscriptions to the plank-road companies, and authorized the issue of the bonds, and that the bonds were issued in conformity to the statutes. It was not their province to make the declaration, and it is of no more value as evidence, than the declaration of any other citizens of Wetumpka. It may be founded in truth, but is not the evidence of the fact the statute requires, and declares exclusive.

Another feature, distinguishing the case, is the statutory declaration of the invalidity of the bonds, the restrictions of the statute not having been observed, which brings the case within the doctrine of *Anthony v. Jasper County,* *supra.* There not having been an entry on the minutes of the board of mayor and aldermen, signed by each member, of an order or authority for the issue of these bonds, they cannot be pronounced valid obligations binding the city.

But, it is insisted the judgment at law, against the mayor and aldermen, in favor of Rose, founded on the bond issued to him, estops this defense, so far as the appellee is concerned. The answer abounds with allegations of fraud and collusion in the obtaining of that judgment, which, it is proper to say, are wholly unsupported by evidence. It appears to have been obtained in the regular course of judicial proceedings, and certainly before a court of competent jurisdiction. We have no doubt that, in any proceeding at law for its enforcement, it is conclusive, and that in all courts it entitles Rose, and his transferree, to stand as a judgment creditor of the city, with all the rights which would flow from that relation. The equity of the original bill, however, depends upon the right of the appellee to enforce the pledge and appropriation of the taxes arising from the assessments on real estate made by the city, and of the real estate of the city, made by the third section of the act of 1848. To obtain relief merely as a judgment creditor, there is no ground of equity jurisdiction averred in the original bill—no obstruction to, or inadequacy of legal remedies. The enforcement of the trust created by the statute, to which we have referred, is the exclusive ground upon which the resort of the appellee to a court of equity can be maintained.— *Rice v. Watertown,* 19 Wall.

It is only to the bonds issued under authority of, and in

[Mayor, &c., of Wetumpka v. Wetumpka Wharf Co.]

conformity to the statutes, that the trust extends. Debts may be contracted by the city, and judgments rendered against it founded on such debts; security for these, the statute did not intend or create. A judgment or decree of a court of competent jurisdiction is conclusive, not only of the subject-matter determined, but of all other matters which could have been litigated and decided. Whether the trust and security afforded by the statute attached to the bond to Rose, was not a matter which could be determined in a court of law. A court of equity only, when the enforcement of the trust was claimed, could determine that question. The validity of the bond, as a debt of the corporation, could have been litigated in the action at law; and it may be conceded that the judgment conclusively determines that question. It does not determine that it is a debt to which the trust of the statute extends; and by no laches of the officers of the corporation can the trust be made to embrace any demand not within its terms.—*Branham v. Mayor, &c. of San Jose*, 24 Cal. 604; *Batchelder v. Taylor*, 11 N. H. 129.

We have not overlooked other questions which have been argued by counsel. They cannot change the results of our deliberations; and it is unnecessary to protract this opinion by a discussion of them.

The decree of the chancellor must be reversed, and the cause remanded, that the Court of Chancery may order a dissolution of the injunction heretofore granted, a settlement of the accounts of the receivers, and the payment of all funds in their hands to the mayor and aldermen, and the restoration of the wharf property to their possession; a restitution to them of all moneys paid to Smith, or to the wharf company, under orders or decrees made in this cause, and a dismissal of the original bill, at the cost of the appellee; and the cross-bill at the cost of Smith.

STONE, J., not sitting.