# The City of Eufaula *v.* McNab.

## *Bill in Equity to Enforce Vendor's Lien.*

1. *Municipal corporation; who cannot bind.*—Neither the agents, officers, nor city council of a municipal corporation can bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being in terms authorized), is against public policy.

2. *Same; when bound by its agents or officers.*—A municipal corporation is bound only when its agents or officers, by whom it can alone act, if it acts at all, keep within the limits of the chartered authority of the corporation.

3. *Same; contracts of; when ultra vires.*—All contracts of municipal corporations, which are not necessary and proper in order to carry into effect the powers expressed in their charters, and which are not germane to the governmental purposes for which such corporations may have been organized, are *ultra vires.*

4. *Same; charter of; in case of doubt, how construed.*—In case of any doubt or ambiguity arising out of terms used in the charters of municipalities and counties, which are invested with civil policies, and political functions, the charters are strictly construed against the existence of such doubted power, and are resolved by construction in favor of the public.

5. *Charter of the city of Eufaula; section 24 of, construed.*—The charter of the city of Eufaula, entitled "An Act to establish a new charter for the city of Eufaula," approved February 28, 1870, (Session Acts 1869-70, pp. 186, 194), conferred "full power and authority upon the city council to purchase and provide for the payment" of "all such real estate and personal property as may be required for the use, convenience, and improvement of the city," &c. Acting under this power, the city council of Eufaula purchased a tract of land located within the corporate limits of the city, for the benefit of the S. E. Ala.

[City of Eufaula v. McNab.]

A. & M. Ass., and as a place for holding "their annual fairs," and the association was given "the exclusive use of the premises." The consideration paid was $10,000 of the bonds of the city, running twenty years and bearing interest from date with coupons attached. *Held*, that the action of the city council in making the purchase of the land for the *particular purpose* for which it was bought, was *ultra vires*.

6. *Same ; purchase of property in aid of private enterprise, not permitted.*— Under such a power in a charter it is not contemplated, nor permissible, that such property shall be acquired in aid of any private enterprise not of a public character, however laudable may be its purpose, or however useful may be its encouragement.

7. *Municipal corporation ; right of to contract, how limited.*—The right of a municipal corporation to contract must be limited by the right to tax, and if in the given case no tax can lawfully be levied to pay the debt, the contract itself is void for want of authority to make it.

8. *Estoppel ; when does not apply to municipal corporation.*—When a municipal corporation makes a contract which is *ultra vires*, the fact that interest has been paid on the debt created by such contract, either by the corporation itself, or by the beneficiary of the contract, with the concurrence of the corporation, does not affect the case, and cannot work an estoppel.

9. *Bill to enforce vendor's lien ; when can not be retained after failure of its specific end.*—Where the case made out by a bill is that of a vendor's lien, and the prayer of the bill is for the enforcement of the lien and a money decree for any balance due, it cannot, when it fails as to this specific end, be retained as a bill for rescission and cancellation.

APPEAL from the Chancery Court of Eufaula.
Heard before Hon. N. S. GRAHAM.
The opinion sufficiently states the facts.

HENRY R. SHORTER, for appellant.

JNO. M. McKELROY, and D. M. SEALS, *contra*.

(NOTE.—No briefs have come into the hands of the Reporter.)

SOMERVILLE, J.—The general principle of law is set-tled, beyond controversy, that the agents, officers, or even city council, of a municipal corporation, *can not bind the corporation* by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being in terms authorized) is against public policy. The doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators—the officers are but the public agents of the corporation. The duties and powers of the officers or public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger, and accompanied with such abuse, that it would soon end in the ruin of municipalities, or be legislatively overthrown. These considerations vindicate

·both the reasonableness and necessity of the rule, that the corporation is bound only when its agents or officers, by whom it can alone act, if it acts at all, *keep within the limits of the chartered authority of the corporation.*"—1 Dillon on Municipal Corp. (2nd Ed.) § 381.

Municipal corporations, it is obvious, can exercise only such powers as are expressly granted in their charters, and such as may be necessary and proper in order to carry such express or direct powers into effect ;* but these powers include those which are indispensably necessary to the declared objects . and germane to the governmental purpose for which such corporations may be organized.— *City Council v. Plank Road Co.*, 31 Ala. 76 ; *Mayor, &c. v. Yuille*, 3 Ala. 137; 1 Dillon on Mun. Corp. § 55 ; *Firemen Ins. Co. v. Ely*, (5 Conn. 560), 13 Amer. Decisions, 100.

All contracts, therefore, which are unauthorized by these principles are *ultra vires*, and impose no legal liability upon the corporations which purport to be bound by them. This is conceded to be a most salutary principle, and one of transcendent importance to the protection of the citizen against exhorbitant and unauthorized taxation, imposed for ends entirely foreign to legitimate governmental purposes.—1 Dillon on Mun. Corp. § 55 ; § 381, *note* 2. To such an extent is this true, that the law rather favors the application of the doctrine of *ultra vires* to · municipalities and counties, which are invested with civil, police and political functions, and in case of any ambiguity or doubt arising out of terms used in the charter, they are strictly construed against the existence of such doubted power, and are resolved by construction in favor of the public.—(Green's Bryce's *Ultra Vires*, p. 42, *note* ; *Mayor, &c. v. Ray*, 19 Wall, 468 ; *Mintum v. Larue*, 23 How. 435 ; 1 Dillon Mun. Corp. § 55, *note* 1.) As said by the Supreme Court of Massachusetts, per PARKER, C. J., in *Stetson v. Kempton*, 13 Mass. 272, " it is important that it should be known that the power of the majority over the property, and even the person, of the minority, is limited by law to such cases as are clearly provided for, and defined by the statute which describes the powers of these corporations." *Ib.* 7 Amer. Dec. 145 ; 2 Kent's Com. 3 ;1, 292.

The charter of the City of Eufaula, entitled " an act to establish a new charter for the City of Eufaula," approved February 28, 1870, (Session Acts 1869–70, pp. 186, 194,) contains the following section :

Sec. 24. *Be it further enacted,* That the council shall have full power and authority to *purchase, and provide for the payment* of the same, all such *real estate* and personal property

[City of Eufaula v. McNab.]

as may be *required* for the use, *convenience and improvement of the city*, &c."

Under the power supposed to be conferred by this section, the City Council of Eufaula, in the year 1872, purchased from the appellee, John McNab, thirty-four acres of land located within the corporate limits of the city, and a warranty deed was executed by McNab, conveying the same in fee simple to the city. The consideration paid was $10,000 of the bonds of the city, running twenty years, and bearing interest from date, with coupons attached. This bill is filed to enforce the vendor's lien on the land for the accumulated interest, which amounts to about five thousand dollars, and also to fix the liability of the city of Eufaula for principal and interest of the bonds. The Chancellor made the decree prayed for, and ordered the sale of the lands for its payment, and the city of Eufaula appeals from this decree.

The question presented for our consideration is one of *ultra vires*, as to the corporate power of the city to make the purchase of this land for the *particular purpose* for which it is shown to have been bought. .

It may be conceded, that, if the land in question had been purchased for an exclusively *public use*, as being designed for dedication to a purpose within the usual scope of municipal governments, it might be a proper exercise of corporate power under the above section, and the validity of the contract of purchase would not be affected, or rendered invalid, by any subsequent perversion of the land to unauthorized uses not shown satisfactorily to have been mutually intended at the time of the purchase.—2 Dillon on Mun. Corp, § 444 ; *Weismer v. Village of Douglas*, (64 N. Y. 91), 21 Amer. Rep. 586. But the terms of the charter are imperative, that such property must be " *required* for the use, convenience and improvement of THE CITY." Collateral advantages, incidentally resulting in the promotion of the city's commercial or business prosperity, will not be sufficient. It is not contemplated or permitted that such property shall be acquired in aid of any private enterprise not of a public character, however laudable may be its purpose, or however useful may be its encouragement. As said by Mr. Justice Miller, in *Loan Association v. Topeka*, 20 Wall. 655, 660 : " It follows that in this class of cases the right to contract must be limited by the right to tax, and if in the given case no tax can lawfully be levied to pay the debt, the contract itself is void for want of authority to make it." The same view was expressed by BRICKELL, C. J. in the *N. O. M. & C. R. R. v. Dunn*, 51 Ala. 128, 136, where the following language is used : " The power of taxation thus conferred [by the charter] must be limited and con-

fined strictly to the purposes for which the corporation is created. The revenues derived from the exercise of this power must be faithfully applied to these purposes. The corporate authorities cannot, without a violation of duty and usurpation of power, appropriate the revenues thus produced to any other purposes or objects than such as are fairly expressed or reasonably implied in the charter. It is not material what is the character of the object, or how pressing the necessity, or what are the benefits, real or imaginary, which may flow to the city. If not within the purposes of the act of incorporation, there is a want of power in the corporate authorities. It was said by the Supreme Court of Maine, in *Allen v. Inhabitants of Ivy*, 70 Me. 124, that "taxation, by the very meaning of the term, implies the raising of money for *public uses*, and excludes the raising if for *private* objects and purposes." "I concede," says Black, C. J., in *Sharpless v. Mayor*, 21 Penn. 168, "that a law authorizing taxation for any other than *public purposes*, is void."

It is useless to review in detail the evidence in this case as to the purpose for which this land was purchased. The scheme was manifestly inaugurated for the benefit of a private corporation, with the expectation, no doubt, of incidental advantages to the city of Eufaula, and with the belief, perhaps, that it would never necessitate municipal taxation for the debt created. The city ordinance of May 21, 1872, provided, "That his Honor, the Mayor, be authorized to have nine thousand seven hundred dollars, twenty years bonds, of the city of Eufaula, bearing eight per cent. interest, payable annually on the 1st day of December, printed *for the purpose of complying with the contract made with Mr. John McNab*, FOR THE LAND TO BE USED *by the South-East Alabama Agricultural and Mechanical Association.*" The evidence further shows that all the contracting parties fully understood that this land was really purchased by the city for the benefit of this agricultural association, as a suitable place for holding "their annual fairs," and that they had "the exclusive use of the premises." And the bonds, as printed and delivered to appellee, show on their face that they were given "for land embraced in the present *Fair Grounds* in said city;" a small difference of a few hundred dollars being paid in money.

We are of opinion that the city of Eufaula had no power to make this purchase for such a purpose. The city council, therefore, have no authority to levy taxes for the payment of the bonds, or the accumulated interest on them, and they impose no legal liability for their payment upon the municipality of Eufaula.—*Loan Association v. Topeka*, 20 Wall. 655; *Allen v. Inhabitants of Ivy*, (60 Me. 124); 11 Amer. Rep.

185; *Lowell v. City of Boston,* (111 Mass. 454); 15 Amer. Rep. 39; *Hanson v. Vernon,* (27 Iowa, 28); 1 Amer. Rep. 215; *Railroad Co. v. Dunn,* 51 Ala. 128; *Weismer v. Villiage of Douglas,* (64 N. Y. 91), 21 Amer. Rep. 586.

The fact that two installments of interest were paid on the bonds, even had it been done directly by the City of Eufaula, instead of by the private corporation in possession of the land, with the city's concurrence, does not affect the case, and cannot work an estoppel.—*Loan Association v. Topeka, supra.* The ground upon which corporate contracts beyond the scope of charter powers are deemed invalid, seems to be, that it would be contrary to a sound public policy to permit their enforcement.—*Fireman Ins. Co. v. Ely,* 13 Amer. Dec. 108, *note.* To permit the doctrine of estoppel to apply to such cases, as forcibly suggested by STONE, J., in *Savings Bank v. Duncan,* 54 Ala. 481, would be " clothing corporations with the ability to increase their powers indefinitely by sheer usurpation."

This view of the case compels a reversal of the Chancellor's decree, and the dismissal of the bill. Under the present frame of it, we do not think it can be retained as a bill for rescission and cancellation. The case here designed to be presented is that of a legal and valid sale of lands by the complainant to the city of Eufaula, and the issue by the latter of valid and binding obligations for the purchase-money. The prayer is for the enforcement of the vendor's lien, and a money decree for the balance.

The case made by a bill for rescission and cancellation would be a new one. It must aver that the sale was void, and the issue of the bonds *ultra vires.* The prayer would be for the cancellation of the contract, and must be accompanied with an offer to surrender the bonds to the defendant. It is true that a bill may be framed with a double aspect, or in the alternative, but either of the aspects must entitle the complainant substantially to the same relief. But when a bill is filed for one purpose and it fails to this specific end, it can not be retained so as to change it into a bill for another distinct purpose. It cannot be so amended as to make a new case. Nor can relief be granted under the general prayer entirely distinct from, and repugnant to the special relief prayed. And for a like reason, no amendment is allowable introducing a special prayer for relief inconsistent with the original prayer, and not agreeable to the case made by the bill.—*Thomason v. Smithson,* 7 Port. 144; *Micou v. Ashurst,* 65 Ala. 607; Adam's Eq. (*star* page) 309, *note*; 1 Dan. Ch. Prac. 383–6.

The decree of the Chancellor is reversed, and a decree

here entered dismissing the appellee's bill at his costs, in this court and the court below. This is without prejudice to the right of complainant to file another bill, such as may be authorized by the facts of the case.