# Allen *v.* Intendant and Councilmen of LaFayette.

*Bill in Equity by Citizens, Tax-Payers, for Injunction against Corporate Authorities, restraining Payment of Invalid Warrants.*

1. *Injunction at suit of property-owners and tax-payers, against municipal authorities, restraining payment of invalid warrants.*—Property-owners and tax-payers, residents of a municipality, may maintain a bill in equity against the corporate authorities, to enjoin the payment of warrants issued without authority of law; but, if it appears that, although the warrants are void, the holder has a valid claim against the corporation for the money advanced on them, the injunction will not be retained.

2. *Municipal corporation; power to purchase property for school-house.* When the charter of a municipal corporation confers on it power to purchase and hold property, real and personal, not exceeding a specified value, and to maintain public schools within its boundaries (as is conferred on the town of LaFayette in Chambers county), it is authorized to purchase and hold property for use as a school-house, but not exceeding in value, with the other property owned, the maximum amount specified.

3. *Same; power to incur debt.s*—The power of taxation is conferred on municipal corporations to enable them to provide means with which to meet and defray their current expenses, and it is to be assumed that, ordinarily, the means so provided will be adequate for that purpose;

41

[Allen v. Intendant and Councilmen of LaFayette.]

yet, in recognition of a practical necessity, by custom long established, if not express law, they are allowed to create debts, in the accomplishment of an object clearly within their powers, and thus anticipate corporate revenues, when the funds in hand are not sufficient, and, as evidence of such debts or liabilities, to issue warrants on their treasurer, or other disbursing officer, in favor of the creditors.

4. *Same; power to borrow money.*—The power to borrow money is not incident to municipal corporations, but must be expressly granted, or must arise by implication from the imposition of duties which can not be performed without borrowing money; and though the corporation may create a valid debt, and issue a warrant to the creditor as evidence thereof, which he may transfer to any person who will advance the money on it, a direct loan of money to the corporation, taking its warrant for the amount, is governed by a different principle.

5. *Same; liability for money had and received.*—When money is borrowed by a municipal corporation, without authority of law, but for a legitimate purpose, and is used and applied for that purpose; although the warrant issued to the lender may be *ultra vires* and void, the corporation is liable, on principles of equity and justice, as on an implied assumpsit for money had and received; but this principle does not apply where there is an express prohibition of the power to borrow money.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. S. K. MCSPADDEN.

The bill in this case was filed on the 21st December, 1889, by David G. Allen and others, citizens, tax-payers, and property-owners in the town of LaFayette in said county, against the corporate authorities of the town and Mrs. S. A. Frederick; and sought to enjoin and restrain said corporate authorities from paying two warrants which they had drawn, in favor of Mrs. Frederick, and which were given for money borrowed from her by them. The chancellor refused to dismiss the bill for want of equity, but dissolved the injunction on motion; and the complainants assign this dissolution as error.

N. D. DENSON, and TOMPKINS & TROY, for appellant, cited Dillon's Municipal Corporations, vol. 1, p. 173; *Wharf Co. v. Wetumpka,* 63 Ala. 611; *Minturn v. Larue,* 23 How. 435; *Hodges v. Buffalo,* 2 Denio, 110; *Mayor v. Ray,* 19 Wall. 468; *Police Jury v. Britton,* 15 Wall. 566; *Railroad Co. v. Dunn,* 51 Ala. 128; *Simpson v. Lauderdale County,* 56 Ala. 64; *Gause v. Clarksville,* 5 Dill. C. C. 165; *Hackettstown v. Swackhamer,* 8 Vroom, 37 N. J. 191; *Ketchum v. Buffalo,* 14 N. Y. 356; *Concord v. Robinson,* 121 U. S. 165; *Clark v. Des Moines,* 87 Amer. Dec. 423; 3 Tenn. Ch. 52; 2 Johns. Ch. 202; 3 Md. Ch. 392; *Savings Bank v. Nashville,* 3 Tenn. Ch. 338; *Rembert v. Brown,* 17 Ala. 667; *Satterfield v. John,* 53 Ala. 127; Hill. Injunctions, 95 § 11.

[Allen v. Intendant and Councilmen of LaFayette.]

SAMFORD & CHILTON, *contra*, cited 30 .Amer Dec. 193; *Douglas v. Virginia City*, 5 Nev. 147: *Bank v. Danville*, 60 Ind. 504; 19 Iowa, 21; 48 Ill. 424; 3 R. I. 199; 84 Penn. 498; *Eureka Co. v. Edwards*, 71 Ala. 256; *Nunn v. Norris*, 58 Ala. 202; *Bland v. Bowie*, 53 Ala. 152; *Wright v. Ware*, 50 Ala. 549; 7 Ohio St. 109; 1 Pom. Equity, §§ 105, 385; Dill. Mun. Corp. § 127, note; 1 Story's Equity, § 64 *e*.

McCLELLAN, J.—The Intendant and Councilmen of the town of LaFayette, on or soon after March 18, 1889, purchased from one Schuessler a brick college building and grounds, situate in LaFayette, and took a quit-claim deed to the property to themselves, the said intendant and councilmen. Only a small part of the purchase-money was paid out of the funds of the town, and the balance, about $1,300, was borrowed from Mrs. S. A. Frederick by the town authorities, and paid to Schuessler. For the repayment of this loan, warrants were regularly drawn against the treasury of the town, for the sums of $659.40, payable January 1, 1890, and $667,72, payable March 1, 1890, respectively, and delivered to Mrs. Frederick. The present bill is exhibited by resident property-owners and tax-payers of the town of La-Fayette, and seeks to enjoin the payment of said warrants, on the grounds (1) that the municipality of LaFayette was without authority to purchase the school-house or college building, and that the money was loaned by Mrs. Frederick with full knowledge that it was to be used in that behalf, and warrants taken by her with full knowledge that it had been so applied; and (2) that the intendant and councilmen of the town of LaFayette had no power under its charter to *borrow money* for any purpose.

1. Assuming that the theory of the bill, as to the powers of the municipality, and as to the character of the transaction between the intendant and councilmen on the one hand, and Mrs. Frederick on the other, is sound, the right of these complainants to maintain the suit is, as a general proposition, fully supported by the authorities, and not seriously controverted by the appellees.—2 High on Inj. §§ 1237 *et seq.*; 2 Dill. Mun. Corp. §§ 914 *et seq.*; 1 Pom. Eq. Jur. §§ 258, 260, 270, 273; 10 Amer. & Eng. Encyc. of Law, 963.

2. The first ground upon which the prayer for relief is based is, in our opinion, untenable. The charter of LaFayette empowers the municipal authorities to purchase and hold, or dispose of, for the benefit of the town, real, per-

sonal and mixed property, to the value of fifteen thousand dollars. Power is also conferred to maintain public schools within the town; and to this end, as well as to defray the ordinary expenses of municipal government, the corporate authorities may levy an annual tax, not exceeding one-half of one per cent. on the assessed value of the property thereof. Acts 1880-81, p. 420; Acts 1888-89, p. 1061. We do not doubt that, under these grants of power, the municipality of LaFayette was fully authorized to purchase and hold a school-house, such as the present bill alleges to have been purchased by the intendant and councilmen of the town. 2 Dill. Mun. Corp. §§ 561 *et seq.*

3. The taxing power is conferred on municipal corporations, of course, for the purpose of providing means with which to meet their current expenses incurred in the performance of the duties resting on them as governmental agencies; and it may ordinarily be assumed that the means thus provided are adequate to the ends in view. Yet, in the nature of things, it is impracticable, if not indeed impossible, for the powers of such, or of any corporations, to be exercised, without incurring liabilities beyond the funds immediately in hand, and thus anticipating corporate revenues. In recognition of a necessity of this kind, it may be said that the law has come to be well settled, to the effect that municipal corporations may create debts in the accomplishment of any object clearly within their powers, and reasonably essential to the attainment of their charter purposes. Custom of long standing and universal adoption, if not express law, has sanctioned the evidencing of such debts by the drawing of warrants therefor on disbursing officers, in favor of creditors.

Applying these principles to the exigencies which presented themselves to the intendant and councilmen of LaFayette, when, in their judgment, the good of the town demanded the purchase of a school-house, we do not question that it was competent for them to buy the property, which they did buy, on a credit, and thus incur a debt to the extent of the price they were to pay, the value of the property not being in excess, when added to the value of other property already owned by the corporation, of fifteen thousand dollars, and the property being of a class and character appropriate to corporate uses in the discharge of legitimate municipal functions. Nor do we doubt that, for a debt thus created, warrants might legally have been drawn on the town treasury,

payable, at stated dates, to the vendor. Had this been done, these evidences of the indebtedness might have been sold and transferred by the vendor to Mrs. Frederick, and she thereby subrogated to all the rights of the first holder.

4. The case alleged by the bill, and admitted in the answers, differs from the case hypothetically stated, in this, and only in this, in substance and effect, that Mrs. Frederick, instead of paying the money to the town creditor, paid it to the town itself, and the latter immediately, and as upon pre-arrangement known to all parties, paid it to Schuessler, and in consideration thereof received a conveyance of the college building. Slight as the difference appears on its face to be, it has, in our opinion, the important operation of converting the transaction into a loan of money by Mrs. Frederick to the corporation, and left in her hands a contract for its repayment which, *as such*, she can not enforce, for the reason that this contract is *ultra vires* the town of LaFayette. Its charter no where expressly confers on the corporate authorities power to borrow money for any purpose, or under any circumstances. And whatever may be the decisions of other courts, and however variant may be the judicial opinion in other jurisdictions on the point, the doctrine is thoroughly well settled in Alabama, that the power to borrow money is not incident to municipal corporations, and that if it exists in any instance, it must be by the force of express legislative grant, or, at least, by force of legislative investment of power coupled with the imposition of duties which are incapable of exercise and performance without the borrowing of money. We need not enter upon a discussion of the reasons which underlie this doctrine. They are many and cogent, and most clearly stated by Judge Dillon, Justice Bradley, and in former adjudications of this court which establish the proposition.—1 Dill. Mun. Corp. §§ 117, 126; *Mayor v. Ray,* 19 Wall. 475; *Simpson v. Lauderdale County,* 56 Ala. 64; *Wetumpka v. Wetumpka Wharf Co.,* 63 Ala. 611.

The intendant and councilmen of LaFayette had no authority, therefore, to borrow this money, nor had they any authority to draw the warrants which were drawn and delivered to Mrs. Frederick. They were the trustees for the inhabitants of the town. Their action in excess of the power with which the trust relation clothed them, and in violation of the duties they owed to their *cestui que trustent,* the present complainants among others, was of no manner

of efficacy in fixing a liability on those for whom they thus usurped the power of acting. The warrants in the hands of Mrs. Frederick are as if they were not, and had never been. Neither the municipality of LaFayette, nor any of its officers or agents, is under any obligation, legal, equitable, or moral, to pay those *warrants*, or to fulfil the *contract* out of which they sprung. But, back of that contract, and back of those warrants, there is, on the facts presented by the bill, and accentuated by the answers, not only a moral, but a legal liability resting on the municipality of LaFayette, and on its officers, *to repay the money which came from Mrs. Frederick, and has been used by the corporation for authorized corporate purposes.* In other words, the town of LaFayette is liable, as upon an implied assumpsit, not under, but wholly apart from the unauthorized contract, and not for the amount its officers *borrowed* from Mrs. Frederick, but for the amount of her money which they *recived and applied* to the purchase of a house, which the charter authorized them to buy, and the town to hold, which was reasonably necessary to the exercise and performance of expressly granted and imposed functions and duties, and which the use of her funds had enabled the corporation to acquire and devote to its legitimate purposes.

The authorities are not uniform to this proposition. It is, however, believed to be eminently sound in principle, and has the support of some of the most distinguished lawwriters, and of courts of marked ability and learning. It is thus formulated by Mr. Brice, with general reference to both public and private corporations: "Persons who have in any way advanced money to a corporation, which money has been devoted to the necessaries of the corporation, are considered in chancery [and also it would seem to follow, in the equitable action for money had and received at law], as creditors of the corporation to the extent the loan has been expended;" and in support of the doctrine thus stated, he cites many cases, in which corporations, without any authority, expressed or implied, to that end had borrowed money, and been holden, although the contract itself was wholly void, to account for so much of it as had been expended in furthering the legitimate objects of the concern.—Green's Brice's *Ultra Vires*, pp. 724 *et seq.* And in this connection, the American editor of the work cited observes: "In the United States, the defense of *ultra vires* interposed against a contract wholly or in part executed, has very generally been

[Allen v. Intendant and Councilmen of LaFayette.]

looked upon with disfavor. The result has been, that in some cases a liberal construction has been applied, so as to destroy the foundation of the defense; in others, the courts have allowed the recovery of the money paid, not upon the contract, but because of the money received and the benefits enjoyed; while, in still another class of cases, the doctrine of estoppel en pais has been applied to exclude the defense;" and many American cases are cited which support one or the other of the positions stated, as being taken by the courts of this country in respect to private corporations.

In regard to municipal corporations, the opinion of Judge Dillon manifestly is in line with the position we have taken. We believe this to be a correct formulation of his views of the law on the point under consideration, as gathered from his inestimable work on municipal corporations; that municipal corporations are liable to actions of implied assumpsit with respect to money or property received by them and applied beneficially to their authorized objects, through contracts which are simply unauthorized, as distinguished from contracts which are prohibited by their charters, or some other law bearing upon them, or are malum in se, or violative of public policy.—1 Dillon Mun. Corp. §§ 126, 132, 133, 459-465; 2 Ib. §§ 935, 937, 938. Thus, in a note to § 126, it is said: "If money is improperly borrowed in advance of liabilities actually created, and reaches the municipal treasury, and is expended by direction of the governing body, for authorized municipal objects, the municipality may then be liable in a proper action or suit; but the action should be, we think, for money had and received, or by suit in equity, and not upon the invalid bonds." And under § 935 it is said: "Where the corporation receives and retains the consideration of an ultra vires contract, it may be liable upon an implied assumpsit in respect to such consideration." And the opinion of Chief-Justice Field, in a case where the subject underwent very thorough examination, is quoted approvingly, to the effect that "the doctrine of implied municipal liability applies to cases where money or property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake, or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do

[Allen v. Intendant and Councilmen of LaFayette.]

justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or, if used by her, to render an equivalent to the true owner, from the like general obligation; the law, which always intends justice, implies a promise."—*Argenti v. San Francisco*, 16 Cal. 255.

Justice Miller, speaking of cases where corporations have been sued on contracts which they have successfully resisted, because they were *ultra vires*, observes: "But, even in this class of cases, the courts have gone a long way to enable parties, who have parted with property or money on the faith of such contracts, to obtain justice by recovery of the property or the money, specifically, or as money had and received to plaintiff's use."—*Salt Lake City v. Hollister*, 118 U. S. 256. To a like effect are the following cases: *Pimental v. San Francisco*, 21 Cal. 362; *Clark v. Saline County*, 9 Neb. 516; *Marsh v. Fulton County*, 10 Wall. 676; *Louisiana v. Wood*, 102 U. S. 294; *Chapman v. County of Douglass*, 107 U. S. 348.

The case of *Read v. Plattsmouth*, 106 U. S. 568, involved the constitutionality of a statute of Nebraska which undertook to impart legality and vitality to certain previously issued bonds of the city of Plattsmouth, upon which money had been raised by the city, and applied to the *acquisition of a lot* and the building thereon of a *school-house*, but which were void for the lack of charter power to issue them. The question of the constitutionality of the statute turned upon a consideration of whether, granting the utter invalidity of the bonds as such, the city was nevertheless not bound for the money thus received and used for corporate purposes; and to this point Justice Matthews delivered the opinion of the Supreme Court of the United States, as follows: "In the present case, the statute does not impose upon the city of Plattsmouth, by an arbitrary act, a burden without consent and consideration. On the contrary, upon the supposition that the bonds issued, as to the excess of $15,000, were void, because unauthorized, the city of Plattsmouth received the money of the plaintiff in error, and applied it to the purpose intended, of building a school-house on property, the title to which is confirmed to it by the very statute now claimed to be unconstitutional, and an obligation to restore the value thus received, kept and used, immediately arose. This obligation, according to general principles of law accepted in Nebraska, was capable of judicial enforcement."

The case of *Gause v. City of Clarksville* involved the power of a municipality, invested with the ordinary corporate powers, to borrow money. The power was denied, and the bonds on which the money was borrowed were held to be void. After announcing this conclusion, Dillon, Circuit Judge, proceeds: "It will not validate these bonds, so as to make them the basis of a recovery, even if it be shown that the money borrowed was in each instance used for the purpose for which they are recited in the deed to have been borrowed. But the plaintiff may amend, and add in respect to these bonds counts in the nature of counts for money had and received. Adhering to the decisions of this court (Treat, J.) in *Wood v. Louisiana*, [affirmed on appeal and reported in 102 U. S. 294] the present holder of the bonds will then be treated as the assignee of the original holder or payee in respect of the money actually lent to the city; and if, after the city obtained it, the same was in fact expended for the erection and repair of wharves, or the improvement of the streets, or possibly, if expended for other authorized municipal purposes under the authority of the city council, the amount advanced with lawful interest, less payments thereon, may be recovered."—*Gause v. Clarksville*, 5 Dill. C. C. 180.

We find no adjudication in Alabama irreconcilable with the doctrine of the foregoing authorities. There are indeed cases which hold that recovery can not be had upon the *ultra vires contract* of borrowing. Such was the case of *Simpson v. Lauderdale County*. The *gravamen* of that action was, that the county had *agreed* to pay a certain sum of money, and that this sum had been *loaned* to the county for building a bridge. It was not sought to charge the county for that it had received plaintiff's money, and *actually used it for a legitimate county purpose*. No question arose, or was discussed in that case, involving the *implied* liability of the county because of the advantage which had accrued to it and all its inhabitants from the expenditure of the plaintiff's money in a structure which the law authorized it to erect. It was not even shown what became of the money, further than that it was borrowed *for the purpose* of being expended. And a right of recovery was denied, because it was rested upon, and involved the assumption of the validity of, an undertaking which the county was without power to enter into. We do not understand the opinion to go further than this; the matter *decided* certainly does not; and to this extent it is in perfect accord with the position we have taken. The

same view may be taken of the case of *Wetumpka v. Wetumpka Wharf Co.*, *supra*, supported by the further consideration, that the *uses* to which the borrowed money was put in that case were themselves *ultra vires*, and not only was the contract without authority and void, but there was a misappropriation of the fund, accomplished or contemplated, so as to preclude the implication of corporate liability from corporate benefits received.

The cases of *Montgomery v. Wetumpka Plank-Road Co.*, 31 Ala. 76, and *Grand Lodge v. Waddill*, 36 Ala. 313, were suits by the corporations themselves, on *ultra vires* contracts, and no position was taken in either which militates against the liability of a corporation, at the suit of an individual, for money or property which it has received upon a void contract, and used in the furtherance of its charter objects. So, too, the decision in *Eufaula v. McNab*, 67 Ala. 588, proceeds on lines wholly distinct from those upon which the case at bar must be determined, and reaches conclusions not at all in conflict with the doctrine which we think must obtain here. Nor is there anything to the contrary in the case of *N. O., M. & C. R. R. Co. v. Dunn*, 51 Ala. 128, cited to the point by appellant's counsel. The benefit there relied on to support the loan or gift of the city's credit was such only as would result, not from the use of funds or property *received* by the city in accomplishing authorized municipal ends, but from, and as merely incident to, the reclamation for private purposes of certain swamp land, whereby the drainage &c. of the city would be improved; and the refusal of the court to accord to this fact the effect claimed for it, was made to rest upon the proposition, that this mode of improving the drainage &c. was not authorized or contemplated by the charter. It would be a fair inference from the opinion on the point, that if the city had in fact gotten money on its unauthorized bond issue, and *applied* it to the improvement of its streets and sewers as directed by its charter, it would have been liable therefor.

So much for the adjudications of this court. We repeat, that nothing *decided* in them is opposed to the view we have taken. There are some cases in other States which assert the contrary doctrine. One of them is *Hackettstown v. Swackhamer*, decided by the Supreme Court of New Jersey, which ranks among the ablest in the country. The opinion denies a right of recovery for money had and received and appropriated to corporate purposes, when it has been obtained on

[Allen v. Intendant and Councilmen of LaFayette.]

an *ultra vires* borrowing contract; Beasley, C. J., intimating that the only remedy, if any, was in equity to be subrogated to the claims of creditors whose debts had been paid with the borrowed money. Judge Dillon says of this proposition, "No necessity is perceived for so strict a doctrine." Dillon Mun. Corp., § 126, n. No other cases are cited by counsel to this point than those we have referred to. Two or three others, tending in greater or less degree to support the view taken by the New Jersey court, have come under our observation in the somewhat exhaustive examination we have given this question; but our conclusion is, that the weight of authority is in favor of the implied liability of municipal corporations under the facts disclosed in this record.

We can not perceive that the doctrine is open to objection on the ground of its supposed evil tendencies and consequences. It is shorn of all perilous possibilities by the limitations which hedge it about. It can not obtain where the charter, or other statute operating in the premises, contains a prohibition of the power to borrow money; since a promise can not be implied in the face of express law, but only in cases where, as in this one, there is merely a defect of power.—1 Dillon Mun. Corp., § 451. It involves no danger of the municipality being charged with moneys which have been appropriated by its officers to their own use, or even to the use of the corporation, except in the manner, to the extent, and for the purposes authorized by the charter, as in either case the implication will not arise, and corporate liability will not attach. None of the evils which are justly supposed to result from the power to borrow money, which are not also attendant upon the capacity to incur debts, and which therefore have led to a denial of the former power unless expressly, or by necessary intendment, conferred, while the latter is admitted as incident to ordinary municipal functions, can possibly supervene, where the money which has been borrowed, has also been honestly devoted to expenditures for which the corporate authorities might have incurred debt; and to declare liability in the one instance, and deny it in the other, on the ground of evils which pertain alike to both, would be an anomaly to which we can not subscribe. Indeed, we apprehend that the power to create debts may be productive of more evils in municipal government, than could, in the nature of things, result from the doctrine we are considering, when would-be lenders of money come to understand that the return of their proverbially timid

[Allen v. Intendant and Councilmen of LaFayette.]

capital depends, not upon the contracts they make, but on the faithful application of the loan to certain specific objects, by persons over whom they have no control.

From every point of view, therefore, we feel safe in affirming, that under the case presented by the bill and answer—there really being no dispute about the facts in this regard—Mrs. Frederick has a valid demand against the town of LaFayette, for the amount of money advanced by her; not because the corporate authorities agreed to repay it to her, but because they have legitimately used it for the benefit of the town, in a way, and to an end, fully authorized by its charter. The warrants she holds are not enforceable as such, yet they truly represent the amount of her claims; and in the payment of that amount the corporate authorities would do more than equity and justice require of them. It would be an idle and useless thing, therefore, to enjoin their payment; and exercising that discretion which may always be indulged with reference to the grant or refusal of an injunction, when substantial equity does not demand the issuance of the writ, we decline to reinstate it in this case. *McBryde v. Sayre*, 86 Ala. 458.

The decree of the chancellor dissolving the injunction is affirmed.